FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 17 2006
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ALTON BROWN,

           Petitioner,

        -against-                    **REPORT AND RECOMMENDATION**
                                       03-CV-0361 (DGT)(LB)

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

           Respondent.
----------------------------------------------------X

**LOIS BLOOM, United States Magistrate Judge**:

Alton Brown petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Honorable David G. Trager, United States District Judge, referred the petition to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the petition should be denied.

## BACKGROUND

### I. Facts

On November 20, 1995, petitioner and five other men robbed the Kings Corner Bar and its patrons. Kings Corner Bar is located on Clarkson Avenue across the street from Kings County hospital and is frequented by hospital employees and Department of Corrections officers. Leroy Nichols, a retired captain in the Department of Corrections, was shot and killed by petitioner's co-defendant, Keith Braithwaite, during the robbery.

All six perpetrators fled the bar, three of them wounded, including petitioner who was shot. Petitioner was found on a nearby street and transported to Kings County Hospital by ambulance where he was treated for his gunshot wounds and questioned, on the following day,

by the police.

## II. The Suppression Hearing

Petitioner moved to suppress his statements to law enforcement officers. The trial court held a Huntley hearing beginning on June 5, 1996. People v. Huntley, 15 N.Y.2d 72, 204 N.E.2d 179 (1965). According to detective Wright, petitioner was not in a condition to be interviewed prior to undergoing surgery for his wounds. (H.[1] 249). Wright returned to the hospital the next morning, November 21, 1995, after a nurse advised him that the petitioner was out of surgery. (H. 90, 252-53). Wright observed that petitioner was "uncomfortable" but alert and coherent at 10:30 a.m.; petitioner was given and waived his Miranda rights. ( H. 91). Petitioner made a detailed statement in his hospital room regarding his participation in the robbery. (H. 93-97). At 2:30 p.m., petitioner's statement was audio-taped by an Assistant District Attorney. (H. 97). The audiotape of petitioner's statement was played for the court and its transcription is part of the record. (A. 1-17). The trial court denied defendant's motion and found that petitioner's statements were voluntary. (A. 51-53).

## III. The Trial

Petitioner was tried in Supreme Court, Kings County with co-defendant Brathwaite; however, the Court empaneled separate juries for the defendants. At the conclusion of the trial on February 10, 1997, petitioner was found guilty of one count each of murder in the second degree

---

[1] "H." refers to pages of the Huntley hearing transcript, volumes 1-5 of the state record. "Tr." refers to pages of the trial transcript, volumes 6-11. "S." refers to pages of the sentencing transcript, volume 12. Volumes 13-17 are the parties' appellate court briefs. Finally, "A." refers to pages of the respondent's appendix filed with the Appellate Division which includes the transcript of petitioner's audio-taped statement and the hearing court's decision on petitioner's motion to suppress his statement, volumes 18-20.

(N.Y. Penal Law 125.25[3]) and robbery in the first degree (N.Y. Penal Law section 160.15[2]). Petitioner was sentenced on February 24, 1997 to concurrent prison terms of twenty-five years to life on the murder count and twelve and one-half to twenty-five years on the robbery count. (S. 9-10).

## IV. Post-Verdict Proceedings

### 1. Direct Appeal

Petitioner's appeal to the Appellate Division, Second Department raised the following grounds: (1) that the trial court erred in denying petitioner's motion to suppress; (2) that trial counsel was ineffective; and, (3) that the prosecutor's summation deprived defendant of a fair trial and due process of law. Petitioner argued that trial counsel was ineffective because he (a) failed to object to the denial of his motion to suppress; (b) failed to introduce petitioner's medical records at the motion to suppress hearing; and (c) failed to call medical experts during the suppression hearing and trial. Petitioner's *pro se* supplemental brief also argued that counsel was ineffective because he did not move to suppress petitioner's statement as the fruit of an unlawful arrest.

The Appellate Divison, Second Department, rejected these claims and unanimously affirmed petitioner's conviction, People v. Brown, 286 A.D.2d 508, 729 N.Y.S.2d 763 (2d Dep't 2001), finding sufficient evidence to support the hearing court's determination that petitioner's statement was voluntary:

> The defendant contends that the hearing court's decision was erroneous as it characterized his condition as "not * * * serious", suggesting that the court confused him with another hospitalized codefendant. We find that the decision, as a whole, accurately addressed the evidence concerning the defendant and supports the hearing court's determination that his waiver was knowing, voluntary, and intelligent.

Id. at 509. The Court also rejected petitioner's argument that his counsel was ineffective, stating that: (1) counsel's failure to introduce medical records or medical testimony at the Huntley hearing "should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" particularly where petitioner's hospital records "include a notation that he was alert at 7:00 a.m. and 10:00 a.m., prior to his statements to the detective;" and, (2) that counsel was not ineffective for failing to move to suppress his statement on the ground that the police did not have probable cause for his arrest because, contrary to petitioner's assertion, the hospital records indicated that petitioner was not under arrest until he made incriminating statements at the 10:30 a.m. interview. Id. The Court found petitioner's argument regarding prosecutorial misconduct was without merit. Id.

2. Application for Leave to Appeal.

Petitioner sought leave to appeal to the New York Court of Appeals raising the same grounds raised on appeal. Petitioner's application for leave to appeal was denied on January 17, 2002. People v. Brown, 97 N.Y.2d 702, 739 N.Y.S.2d 102 (2002).

3. Collateral Attack

Although petitioner states that he intends to file a motion pursuant to section 440.10 of the New York Criminal Procedure Law raising the issue that the court admitted hearsay, Petition ("Pet.") at 8, his intention to file this or any other collateral attack is not relevant to the adjudication of the instant petition.

4. Habeas Corpus Petition

Petitioner filed the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 raising the following grounds: (1) the trial court erred in denying petitioner's motion to suppress his

statements to law enforcement officials; (2) ineffective assistance of trial counsel; and (3) the prosecutor's summation deprived petitioner of a fair trial and Due Process of law.

## DISCUSSION

### I. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard of review for habeas corpus petitions. For claims that have been fully adjudicated on the merits in state court, a petitioner must show that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (*per curiam*) (holding that habeas relief is warranted "only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is an unreasonable application of Federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Williams further held that the reasonableness of the application of the law should be

5

scrutinized objectively and also pointed out that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ, there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decision 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

Great deference is given to state courts concerning the determination of factual issues which "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

## II. Trial Court Did Not Err in Denying Motion to Suppress Statement

Petitioner argues that he was deprived of his right to the "effective assistance of counsel" and right to Due Process when his involuntary statements to law enforcement officials were admitted into evidence. Specifically, petitioner argues that his statements were involuntary because he was in a severely impaired physical state when the police unreasonably pressured him to make the statements.

The Supreme Court has held that the voluntariness of a confession is unquestionably "a legal question requiring independent federal determination." Miller v. Fenton, 474 U.S. 104, 110 (1985); Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997); see also Mincey v. Arizona, 437 U.S. 385, 396 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, th[e] Court is under a duty to make an independent

6

evaluation of the record"). However, factual questions underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Nelson, 121 F.3d at 834.

When evaluating voluntariness of a confession, no one factor is determinative; rather the totality of the circumstances must be evaluated. Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988). The factors to be considered include (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. Id. at 901-02; see also Campaneria v. Reed, 891 F.2d 1014, 1020 (2d Cir. 1989) ("Relevant factors that should be considered include the accused's age, his lack of education or low intelligence, the failure to give Miranda warnings, the length of detention, the nature of the interrogation, and any use of physical punishment.").

It is clear from the record that the state court's factual findings, made after conducting a multi-day pretrial suppression hearing, are well supported. Thus, the state court's factual findings are entitled to a presumption of correctness. Miller, 474 U.S. at 111-12, 117; Nelson, 121 F.3d at 834; Pagan v. Keane, 984 F.2d 61, 63 (2d Cir. 1993) ("If the [district court] concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [it] may, and ordinarily should, accept the facts as found in the hearing.").

Over the course of several days in June 1996, the hearing court conducted preliminary hearings for all six men accused in the shooting at the Kings Corner Bar, entertaining *inter alia* petitioner's motion to suppress his statements to law enforcement officers. The hearing court found that petitioner waived his Miranda rights and voluntarily gave his statement:

> Considering the totality of the circumstances, Brown's statements must be seen as having been given voluntarily. He was given his *Miranda* rights before

7

making each statement and waived those rights. Although he had sustained a
gunshot would in the buttocks, it was not a serious injury. There was no evidence
that Brown was in such pain that his will was overborne, or that he had received
any medication that rendered him unable to understand what he was doing.

In addition, although the detective attempted to goad Brown into making a
statement by telling him he was "looking at a murder charge" and that it was in
his interest to make a statement before his accomplices made statements
implicating him, it is clear that the detective did not make any promise or threat
that would induce the defendant to confess falsely. *See People v. Jordan*, 193
A.D.2d (2d Dep't 1993) (defendant's statements found to be voluntary even
though police falsely informed him that victim was alive; such stratagem does not
render confession involuntary unless accompanied by promise or threat that could
induce false confession).

(A. 53).

Here, there is substantial evidence to support the state court's determination that plaintiff's statement was voluntary. Detective Wright testified that although petitioner was connected to intravenous tubes at the time of his first statement at 10:30 a.m. on November 21, 1995, "he seemed uncomfortable but he was alert and coherent." (H. 90-91). Petitioner was not under arrest at the time of his initial statement to the police (H. 253); he was read his Miranda rights and he indicated he understood the rights by signing the memorandum book from which Detective Wright had read them at the initial questioning (H. 91-93); and petitioner waived his Miranda rights again when they were reread to him before he provided an audio-taped statement to law enforcement personnel approximately four hours later. (A. 1-4; H. 97, 264-65, 269, 439).

Petitioner argues that his statement could not be voluntary because he had recently emerged from surgery for his gun shot wounds and was "undoubtedly heavily medicated." Petitioner's Reply Memorandum ("Reply") at 6-7. The hearing court was aware of these circumstances. Moreover, while "[t]he Constitution does not countenance the official imposition of severe pain or pressure for purposes of interrogation," Chavez v. Martinez, 538 U.S. 760, 795

8

(2003) (Stevens, J., dissenting); Mincey, 437 U.S. at 401 (statements found involuntary where "continuous" questioning occurred while defendant was connected to tubes and breathing apparatus, appeared confused, complained of pain and repeatedly asked that questioning desist), questioning petitioner was not unreasonable under the circumstances. Although each case turns on its own facts, hospitalized defendants can knowingly waive their Miranda rights. See Reinert v. Larkins, 379 F.3d 76 (3d Cir. 2004) (state court determination that defendant was competent to waive his Miranda rights while being transported to hospital in an ambulance after being found in his home in a delirious state and with large slashes on his wrists was not contrary to, or an unreasonable application of clearly established federal law); Ford v. Hoke, No. 91 Civ. 4093, 1994 WL 594283, *5 (E.D.N.Y. Oct. 25, 1994) (petitioner able to intelligently waive Miranda rights despite gunshot wound to his head, surgery, and injury to his eyesight). Serious wounds do not necessarily preclude a defendant's knowing waiver. See also Campaneria, 891 F.2d at 1020 (defendant recovering in hospital from a knife wound was sufficiently in control of his faculties to waive his constitutional rights).

Here, petitioner suffered three gun shot wounds and was operated on from 9:15 p.m. to 10:05 p.m. on the day of the shooting; however, the police did not question him until 10:30 a.m. the next day, November 21, 1995. (H. 251-53; A. 89-91). While petitioner's medical records were not introduced at the pretrial hearing, Detective Wright testified that petitioner was alert and coherent at the time of the initial interview. The transcript of the audiotape recorded later that day does not reveal any lapses in petitioner's concentration, expression of unwillingness to give a statement, complaint of pain or any request to cease the questioning. (A. 1-17). Finally, it is clear from the medical records introduced at trial that while plaintiff suffered multiple gun

shot wounds, his wounds were repaired in a fairly short surgery the same night as the shooting and he left the operating room in "good condition." (A. 110-11). The medical records also indicate that at 10 a.m. on November 21, 1995, one-half hour before plaintiff's initial statement, petitioner was brought "from the recovery room alert and responsive." (A. 95).

Petitioner also argues that at the time of the incident he was "a 17 year old boy." Reply at 6. According to the hospital records, petitioner's birth date is March 17, 1977, making him eighteen years, 8 months and 13 days old on November 20, 1995. (A. 68, 70). The Court is not persuaded that "Detective Wright's 'advice' to the petitioner to tell 'his side of the story' because his 'cohorts' were beginning to make statements and were 'making him look like the bad guy' undoubtedly heightened the coercive atmosphere surrounding the petition." Reply at 7. The hearing court considered this argument and concluded that the statement was made voluntarily. Moreover, "the presence of a direct or implied promise of help or leniency alone has not barred the admission of a confession where the totality of the circumstances indicates it was the product of a free and independent decision." Green v. Scully, 850 F.2d at 901 (citing United States v Guarno, 819 F.2d 28, 30 (2d Cir. 1987); United States v. Ceballos, 812 F.2d 42, 51 (2d Cir. 1987)). Petitioner's questioners' conduct was not coercive or overbearing.

After a thorough review of the record and the totality of the circumstances, the Court concludes that the state Court's decision finding petitioner's statement was voluntary was not contrary to or an unreasonable application of Federal law. Although petitioner surely suffered pain and discomfort due to his wounds, his condition was not so severe as to render him unable to make a voluntary statement. Therefore, the Court should deny petitioner relief on this claim.

## III. Prosecutor's Summation

Petitioner contends that the prosecutor's closing statements deprived him of Due Process and a fair trial. Specifically, he argues that the prosecutor "twisted the defense argument on voluntariness." Pet. at 6. Petitioner apparently refers to the prosecutor's statements that: "the victim isn't in this courtroom. The victim is lying in a hole in the ground . . . " and "who is the victim here? Should we be feeling sorry for Alton Brown?" (Petitioner's Reply Memo at 18; Tr. 599).

Habeas relief based on a claim of prosecutorial misconduct during summation is unavailable unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Tankleff v. Senkowski, 135 F.3d 235, 252-53 (2d Cir. 1998) (To obtain relief on a prosecutorial misconduct claim, the court must find that the prosecutor's comments constituted "more than mere trial error, and were instead so egregious as to violate the defendant's due process rights."); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). In making this determination, the habeas court should consider the severity of the prosecutor's conduct, the measures, if any, that the trial court took to remedy any prejudice, and the certainty of conviction absent the prosecutor's remarks. Tankleff, 135 F.3d at 252.

Even assuming the prosecutor's remarks were improper, no substantial prejudice resulted. Here, defense counsel's objection to the prosecutor's comment was sustained and the court instructed the jury to disregard the remarks (Tr. 599). The courts have repeatedly stated that the severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding. See, e.g., United States. v. Elias, 285 F.3d 183, 191 (2d Cir. 2002); United States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995) ("[M]ost of the cases in which we have reversed convictions as a result of prosecutorial misconduct have involved repeated improper statements whose aggregate effect was more likely to undermine the fairness of the trial."). Here, the prosecutor's comments were isolated remarks in an otherwise fair proceeding and the trial court's instruction, albeit terse ("Jury disregard that") (Tr. 599), had a curative effect. The strong evidence of petitioner's guilt presented at trial makes it highly probable that the jury would have convicted the defendant regardless of the prosecutor's comment. In sum, the court finds that the prosecutor's comments on summation did not infect petitioner's trial so as to deny him the fundamental fairness guaranteed by the Fifth and Fourteenth Amendments. Thus, the Court should deny petitioner habeas relief on this claim.

## IV. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel's performance was ineffective at the pretrial suppression hearing as he (1) failed to move to suppress petitioner's statements to police on Fourth Amendment grounds; and, (2) failed to introduce evidence of his hospital records which would have (a) revealed the medications he was given and, (b) revealed that contrary to the police officer's testimony, he was shackled to his bed when he gave his statement. Pet. at 5-6.

A. The Strickland Standard

To prevail on a constitutional claim of ineffective assistance of counsel, petitioner must show: (1) that his counsel's performance at trial "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 687-88 (1984); and (2) that the performance caused him "substantial prejudice." Id. at 691, 694. With respect to the first prong of the Strickland test, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. In evaluating trial counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. As a result, "the fact that counsel is prepared and familiar with the relevant facts and legal principles is usually sufficient to defeat a claim that trial counsel was ineffective." Farrington v. Senkowski, 19 F. Supp. 2d 176, 179 (S.D.N.Y. 1998).

The prejudice prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable," and that there is a reasonable probability that "but for" the claimed errors of counsel, the trial result would have been different." Strickland 466 U.S. at 694. In other words, counsel's errors must undermine the court's confidence in the trial's outcome. Id. at 691.

B. Application of Strickland Standard

Petitioner claims that his trial counsel was ineffective at the Huntley hearing for failing to introduce his medical records. Petitioner argues that if the records had been introduced, they would have demonstrated that he had received general anesthesia during surgery and "he received

13

intravenous post-operative administration of demerol at the time of his interrogations." Pet. at 5. However, the trial judge was aware from witness testimony that petitioner had undergone surgery for his gunshot wounds the night before he provided the statement, that petitioner had intravenous tubes in his arms and that petitioner was uncomfortable at the time he gave his statement. Petitioner's medical records or testimony regarding his post-operative medication would not have altered the trial court's decision regarding the voluntariness of petitioner's statements.[2] As the appellate court noted, petitioner's hospital records, which were submitted at trial, include a notation that petitioner was alert at 7:00 a.m. and 10:00 a.m., prior to his statements to the detective. People v. Brown, 286 A.D.2d at 509. Further, the decision not to introduce these records at the Huntley hearing may well have been a strategic decision on the part of petitioner's counsel, in order to keep the question open whether petitioner was coherent at the time he was initially questioned.

Petitioner also argues that the medical records reveal that he was shackled at the time he provided the initial statement. In fact, the hospital records first mention that petitioner was handcuffed to the bed at 2 p.m. on November 21, 1995, several hours after his initial statement which detailed his involvement in the robbery, and one-half hour before the audio-taped statement was made. Further, the detective who interviewed petitioner in the hospital testified that petitioner was not under arrest until he made incriminating statements at the 10:30 a.m. interview. Counsel's failure to introduce this evidence which contradicts petitioner's version of events was not unreasonable. Thus, counsel's failure to introduce petitioner's hospital records does not rise to the level of ineffective assistance.

---

[2]The trial court recognized that petitioner's medical records had not been introduced at the time of the Huntley hearing. (A. 51).

In a related argument, petitioner argues that counsel should have also challenged the introduction of his statement on the grounds that he was arrested in contravention of his Fourth Amendment rights. Based on the facts surrounding petitioner's arrest and statement, counsel likely made a strategic decision not to raise this argument as it would have been unsuccessful. Petitioner's own incriminating statement as well as those made by co-perpetrators taken outside the Kings Corner Bar and at the hospital clearly implicated petitioner and provided probable cause for his arrest. As there was no basis for challenging the statement on Fourth Amendment grounds, or at the very least, counsel made a strategic decision not to raise this issue, counsel's failure to raise this argument does not rise to the level of constitutional ineffective assistance. Therefore, petitioner's constitutional claim of ineffective assistance of trial counsel should be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds*, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing standard for issuing certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000). It is also recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a) that any *in forma pauperis* appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Any request for an extension of time to file objections must be made within the ten (10) day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

Lois Bloom
United States Magistrate Judge

Dated: February 17, 2006
Brooklyn, New York

Copies to:

HONORABLE DAVID G. TRAGER,

Alton Brown
97-A-1716
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-0010
PRO SE

RANDALL D. UNGER, Esq.
Attorney for Petitioner
42-40 Bell Boulevard
Suite 302
Bayside, New York 11361
Email: heifetzman@yahoo.com

ANN BORDLEY, Esq.
Assistant District Attorney
Kings County
350 Jay Street at Renaissance Plaza
Brooklyn, New York 11201
Email: bordleya@brooklynda.org